UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SIA V. LEE,<br><br>                 Plaintiff,<br><br>   v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>               Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:09-cv-00011-SMS<br><br>DECISION AND ORDER DENYING<br>PLAINTIFF'S SOCIAL SECURITY<br>COMPLAINT (DOC. 1)<br><br>ORDER DIRECTING THE ENTRY OF<br>JUDGMENT FOR DEFENDANT MICHAEL J.<br>ASTRUE, COMMISSIONER OF SOCIAL<br>SECURITY, AND AGAINST PLAINTIFF<br>SIA V. LEE |

Plaintiff is proceeding in forma pauperis and with counsel with an action seeking judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying Plaintiff's application that was protectively filed on July 31, 2005, and made pursuant to Title XVI of the Social Security Act for supplemental security income (SSI) benefits, in which she had claimed to have been disabled since January 1, 2005, due to depression, sciatica, tail bone/spinal injury, and arthritis with pain in the low back, chest, left knee, right hand, and neck. (A.R. 7, 84-87, 98.) The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1), and pursuant to the order of Magistrate Judge

1

1  Dennis L. Beck filed on May 22, 2009, the matter has been
2  assigned to the Magistrate Judge to conduct all further
3  proceedings in this case, including entry of final judgment.

4      The decision under review is that of Social Security
5  Administration (SSA) Administrative Law Judge (ALJ) Michael J.
6  Haubner, dated June 24, 2008 (A.R. 7-12), rendered after a
7  hearing held on April 17, 2008, at which Plaintiff appeared and
8  testified with the assistance of a Hmong interpreter and an
9  attorney (A.R. 19-47).

10     The Appeals Council denied Plaintiff's request for review of
11 the ALJ's decision on November 14, 2008 (A.R. 1-3), and
12 thereafter Plaintiff filed the complaint in this Court on January
13 5, 2009. Plaintiff's amended opening brief was filed on September
14 24, 3009, and Defendant's brief was filed on October 16, 2009.
15 The matter has been submitted without oral argument to the
16 Magistrate Judge.

17     I. Jurisdiction

18     The Court has jurisdiction over the subject matter of this
19 action pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), which
20 provide that an applicant suffering an adverse final
21 determination of the Commissioner of Social Security with respect
22 to SSI benefits after a hearing may obtain judicial review by
23 initiating a civil action in the district court within sixty days
24 of the mailing of the notice of decision. Plaintiff filed her
25 complaint on January 5, 2009, less than sixty days after the
26 mailing of the notice of decision on or about November 14, 2008.

27     II. Standard and Scope of Review

28     Congress has provided a limited scope of judicial review of

2

1 the Commissioner's decision to deny benefits under the Act. In

2 reviewing findings of fact with respect to such determinations,

3 the Court must determine whether the decision of the Commissioner

4 is supported by substantial evidence. 42 U.S.C. § 405(g).

5 Substantial evidence means "more than a mere scintilla,"

6 Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a

7 preponderance, Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10

8 (9th Cir. 1975). It is "such relevant evidence as a reasonable

9 mind might accept as adequate to support a conclusion."

10 Richardson, 402 U.S. at 401. The Court must consider the record

11 as a whole, weighing both the evidence that supports and the

12 evidence that detracts from the Commissioner's conclusion; it may

13 not simply isolate a portion of evidence that supports the

14 decision. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir.

15 2006); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).

16 It is immaterial that the evidence would support a finding

17 contrary to that reached by the Commissioner; the determination

18 of the Commissioner as to a factual matter will stand if

19 supported by substantial evidence because it is the

20 Commissioner's job, and not the Court's, to resolve conflicts in

21 the evidence. Sorenson v. Weinberger, 514 F.2d 1112, 1119 (9th

22 Cir. 1975).

23     In weighing the evidence and making findings, the

24 Commissioner must apply the proper legal standards. Burkhart v.

25 Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must

26 review the whole record and uphold the Commissioner's

27 determination that the claimant is not disabled if the

28 Commissioner applied the proper legal standards, and if the

1  Commissioner's findings are supported by substantial evidence.

2  See, Sanchez v. Secretary of Health and Human Services, 812 F.2d

3  509, 510 (9th Cir. 1987); Jones v. Heckler, 760 F.2d at 995. If

4  the Court concludes that the ALJ did not use the proper legal

5  standard, the matter will be remanded to permit application of

6  the appropriate standard. Cooper v. Bowen, 885 F.2d 557, 561 (9th

7  Cir. 1987).

8       III. Disability

9            A. Legal Standards

10       In order to qualify for benefits, a claimant must establish

11  that she is unable to engage in substantial gainful activity due

12  to a medically determinable physical or mental impairment which

13  has lasted or can be expected to last for a continuous period of

14  not less than twelve months. 42 U.S.C. §§ 416(i), 1382c(a)(3)(A).

15  A claimant must demonstrate a physical or mental impairment of

16  such severity that the claimant is not only unable to do the

17  claimant's previous work, but cannot, considering age, education,

18  and work experience, engage in any other kind of substantial

19  gainful work which exists in the national economy. 42 U.S.C.

20  1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th

21  Cir. 1989). The burden of establishing a disability is initially

22  on the claimant, who must prove that the claimant is unable to

23  return to his or her former type of work; the burden then shifts

24  to the Commissioner to identify other jobs that the claimant is

25  capable of performing considering the claimant's residual

26  functional capacity, as well as her age, education and last

27  fifteen years of work experience. Terry v. Sullivan, 903 F.2d

28  1273, 1275 (9th Cir. 1990).

In order to qualify for benefits, a claimant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must demonstrate a physical or mental impairment of such severity that the claimant is not only unable to do the claimant's previous work, but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. 1382c(a)(3)(B); Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden of establishing a disability is initially on the claimant, who must prove that the claimant is unable to return to his or her former type of work; the burden then shifts to the Commissioner to identify other jobs that the claimant is capable of performing considering the claimant's residual functional capacity, as well as her age, education and last fifteen years of work experience. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The regulations provide that the ALJ must make specific sequential determinations in the process of evaluating a disability: 1) whether the applicant engaged in substantial gainful activity since the alleged date of the onset of the impairment, 2) whether solely on the basis of the medical evidence the claimed impairment is severe, that is, of a magnitude sufficient to limit significantly the individual's physical or mental ability to do basic work activities; 3) whether solely on the basis of medical evidence the impairment

1  equals or exceeds in severity certain impairments described in
2  Appendix I of the regulations; 4) whether the applicant has
3  sufficient residual functional capacity, defined as what an
4  individual can still do despite limitations, to perform the
5  applicant's past work; and 5) whether on the basis of the
6  applicant's age, education, work experience, and residual
7  functional capacity, the applicant can perform any other gainful
8  and substantial work within the economy. See 20 C.F.R. § 416.920
9  (2008).

10         B. The ALJ's Findings

11         The ALJ found that Plaintiff had severe impairments of mild
12  C4-5 foraminal narrowing and lumbago, but Plaintiff had no
13  impairment or combination thereof that met or medically equaled a
14  listed impairment. (A.R. 9.) The ALJ concluded that Plaintiff's
15  subjective complaints were not entirely credible, and Plaintiff
16  retained the residual functional capacity (RFC) to perform the
17  full range of light work. (A.R. 10-11.) Plaintiff could perform
18  her past relevant work as a harvest worker, and thus Plaintiff
19  had not been disabled since July 31, 2005. (A.R. 12.)

20         C. Plaintiff's Contentions

21         Plaintiff argues that the ALJ failed to provide legally
22  sufficient reasons for rejecting Plaintiff's testimony. Further,
23  he failed appropriately to consider, and to state legally
24  sufficient reasons for rejecting, the opinion of Plaintiff's
25  treating physician Roger Fife, M.D. Plaintiff seeks to have this
26  Court direct an award of benefits.

27  IV. Medical Evidence

28         Plaintiff was treated by Dr. Satnam S. Uppal, M.D., at the

6

Merced Medical Clinic, in 2005. (A.R. 140-57.) In February 2005, Plaintiff complained of neck and back pain, and she was prescribed Ultram, Mobic, and Tylenol. (A.R. 153.)

Steven E. Liston, M.D., a radiologist, reported that radiological studies of the cervical spine taken in February 2005 showed mild neural foraminal narrowing at C4-5 on the left, which was probably congenital. The other neural foramina were patent, and there was no significant facet arthropathy, no osseous trauma or abnormal calcification, and no soft-tissue swelling. (A.R. 151.) Studies of the lumbar spine showed radiographically mild degenerative disk and facet arthropathy at L5-S1, with otherwise normal facet joints and disk spaces. (Id.) Studies of the thoracic spine were negative. (Id.; A.R. 144.)

In March 2005, Plaintiff reported to Dr. Uppal back pain, headaches, shortness of breath, numbness, and joint pain. The assessment was obesity and GERD; tests were planned. (A.R. 147.) A pulmonary function test from March 2005 was within normal limits. (A.R. 148.) An ECG was also normal. (A.R. 146.) In April Plaintiff continued to complain of back pain; the treatment was medication (Paxil, Celebrex, Tylenol, and Ultram). (A.R. 143.) In May 2005, the assessment was back pain and muscle spasm; heat and physical therapy were included in the plan. (A.R. 142.) In June, medications were adjusted to Celebrex, Tylenol, Vicodin, Ultram, and Triavil. (A.R. 141.)

Records from Dr. Roger L. Fife show that in July 2005, Plaintiff complained of pain in the back, wrist, and many joints since she was three years old when a bag of rice was dropped on her from an airplane; her back pain had increased a lot in the

past year. The examination reflected normal findings except a
tender right wrist and low back. The assessment was multiple
joint pains treated with Mobic. (A.R. 139.)

In August 2005, examination at the Merced Medical Clinic for
back, hand, and leg pain revealed generalized symptoms that
included joint pain, swelling, stiffness, muscle spasms, numbness
of the hands, anxiety, and insomnia. The assessment was
fibromyalgia, depression, and anxiety. Treatment was medication
with Celebrex, Acetaminophen, Aleve, Tylenol, Ultram, and
Triavil. (A.R. 140.)

Records of Dr. Fife reflect treatment of Plaintiff a few
times a year from February 2006 through March 2008. (A.R. 171-
75.) In February 2006, Plaintiff complained of back pain for
which medication had worked only thirty minutes and had made
Plaintiff sleep; examination revealed tenderness along the
sacrum. The assessment was low back pain and depression for which
Naprosyn, back exercises, and Lexapro were prescribed. (A.R.
175.) Later that month Plaintiff returned and reported that she
had been treated at the emergency room for fainting and could not
sleep because of her back. Ambien was prescribed along with the
Lexapro. (A.R. 175.) By March 2006, she reported she had been
taking Ativan, which made her feel better; she was just tired and
fatigued. The assessment was a panic attack; Dr. Fife continued
to prescribe Lexapro.

On March 18, 2006, Dr. James A. Nowlan, Jr., performed a
comprehensive internal medicine evaluation with the assistance of
an interpreter from the DDS. (A.R. 158-61.) Plaintiff's chief
complaints were pain in her back, which radiated to her legs and

caused them to be weak, and pain in the right wrist. No records were provided. Plaintiff reported that pressure on her spinal cord, as shown on x-rays, caused the pain; medication provided no relief, and walking and bending caused it to worsen. Plaintiff walked slowly but used no assistive devices. Finger-to-nose and Romberg were normal. Although Plaintiff asserted that she could not go any further when she reached about fifty degrees in a forward bend to touch her toes, she bent over and pulled off her sandals and straightened without any difficulty when asked to remove her shoes. (A.R. 159.) The right wrist was swollen with tenderness over the carpal bones on the right wrist. Motor strength was 5/5 throughout the bilateral upper and lower extremities; sensation was normal throughout, with reflexes 2+ bilaterally in the upper and lower extremities. (A.R. 159-60.)

With respect to a functional assessment, Dr. Nowlan stated:

I found no evidence of any pain in her legs that I could elicit other than what she said. Touching her legs and moving them produced no painful responses. Her back seemed perfectly fine when she was putting her shoes on and taking them off, but she said that she could not bend because of the pain.

(A.R. 160.) He then stated that based on objective findings, Plaintiff could lift and carry ten pounds frequently and twenty-five pounds occasionally, stand and walk for six hours in an eight-hour day, and sit without limitation; there were no postural or manipulative limitations, and Plaintiff did not need to use an assistive device. (A.R. 160-61.)

On April 24, 2006, state agency medical consultant Dr. J. Zheutlin opined that Plaintiff could occasionally lift fifty pounds and frequently lift ten pounds, sit and stand and/or walk

1  about six hours in an eight-hour workday, with no other
2  limitations. (A.R. 162-69.)

3      In June 2006, Plaintiff reported to Dr. Fife that she had
4  broken her ankle a month before; along with her back pain she had
5  a bump in her lower back that was very tender. The note referred
6  to a connective tissue nodule. The assessment was low back pain,
7  treated with an injection of the nodule with Xylocaine, and
8  continued administration of Lexapro and Naprosyn. (A.R. 174.) By
9  September 2006, Plaintiff was following up after gallbladder
10 surgery, which she reported was not connected to her continuing
11 back pain. The assessment was lumbago, gastritis, and depression;
12 the treatment was to continue with Lexapro, Naprosyn, and Nexium,
13 and injecting the back joint with Xylocaine. (A.R. 173.)

14     In March 2007, Plaintiff complained of pain in the ankle and
15 the foot where she had broken it, dizziness, and pain in the back
16 as well as the neck with stress. The assessment was lumbago, foot
17 pain, and depression; the same medications were continued. (A.R.
18 173.) In June 2007, Plaintiff needed more Nexium despite
19 improvement of her stomach; she continued to have back pain and
20 wanted her medication changed, so Cymbalta was prescribed. (A.R.
21 173.) In September 2007, Plaintiff reported back pain in an area
22 where she had undergone surgery. She described epigastric pain
23 that radiated to the lower back; the pain was the same that she
24 had before her gallbladder surgery. She could eat OK and denied
25 digestive symptoms, but she reported that some weeks ago she had
26 run out of her medicine, which had been helping. The assessment
27 was abdominal pain and lumbago; Dr. Fife continued Nexium and
28 Cymbalta and back exercises. (A.R. 172.) In December 2007,

Plaintiff reported continued back pain and stomach pain after eating; taking Nexium made her feel dizzy. She reported not only lower back pain but pain down the front and side of the thighs and lumbar tenderness; the back pain prevented sleep. The assessment was lumbago, depression, reflux-GERD, and "lumbar spine"; the treatment was Prilosec, Cymbalta, and Tylenol. (A.R. 172.) An undated medication note reports that Plaintiff also took Prevacid and Nexium in September and December 2007, respectively. (A.R. 136.)

In March 2008, Dr. Fife noted Plaintiff's report of foot and leg pain for a week along with back pain experienced since she had been three years old, fever for a week, and very much stress because she thought too much. The note referred to foot tenderness on the fifth metatarsal laterally, low back tenderness "but good" range of motion, mild degenerative changes on an x-ray, and normal straight leg raising. The assessment was degenerative arthritis and depression, to be treated with Lidoderm patches, Naprosyn, and Cymbalta. (A.R. 171.)

In March 2008, Dr. Fife completed a check-off type of form for a physical capacities evaluation of Plaintiff. He stated that she could lift and carry up to six pounds frequently and six to twenty pounds occasionally; stand and walk one hour and sit four hours in an eight-hour work day; occasionally bend, crawl, and climb; never squat, kneel, or stoop; and was mildly restricted with respect to extremes of temperature, wetness and humidity, noise and vibration, fumes and dust, and hazards from machinery or heights. (A.R. 177.)

V. <u>Testimony at the Hearing</u>

### A. Plaintiff's Testimony

Plaintiff, who was born in 1967, testified that she could read and write in the Hmong language but could not speak or understand English with the exception of a few easy words, and she could not read or write English. (A.R. 2728.) Her only employment was one month of picking blueberries in 2004 and another in 2005. (A.R. 28, 39.)

Plaintiff lived with her family, including her husband, who worked outside of the home, and six children between the ages of eleven and twenty-four. Plaintiff took care of her personal needs, bathed, dressed, shopped twice a week, prepared light meals twice a day, did the dishes and cleaned up, did laundry and ironed weekly, walked twice a day for fifteen minutes for exercise, spent thirty minutes a day helping her children with their homework, attended school meetings twice a year, watched forty minutes of TV daily, and cooked for a hobby, but she did no yard work, vacuuming, or taking trash away. (A.R. 30-35.) She had a driver's license and drove a van twice a week. (A.R. 29.)

Plaintiff testified that she could lift and carry half a gallon of milk, stand fifteen minutes at a time before needing to sit down and rest, and sit for twenty minutes before needing to get up and move around. She had to lie down three hours out of every eight. (A.R. 35-36.) She had difficulty concentrating and could pay attention to something for forty minutes maximum and then would have to rest for an hour. (A.R. 36.)

### B. Testimony of the Vocational Expert

Jose Chapparo, a vocational expert, testified that one who could perform light work (lifting twenty-five pounds occasionally

and ten pounds frequently) could perform Plaintiff's past work of a fruit harvest worker, which was medium and unskilled, but light as Plaintiff performed it; however, the person could not perform it as it was described in the DOT. The person could also perform other light work, such as flower picker, housekeeping cleaner, and patch worker, with positions available in specified numbers in California and throughout the nation. (A.R. 37-39, 41-43.) One who could lift and carry the same amount but without any postural limits or assistive device, sit without limit, and stand and walk for about six hours in an eight-hour day could perform the same work. (A.R. 44-45.) If one could sit only four hours out of eight, stand and walk each one hour, frequently lift five pounds and occasionally lift six to twenty pounds, occasionally bend, crawl, and climb, but never squat, kneel, or stoop, with mild limitations in environmental hazards and extremes of temperature, the person could not perform Plaintiff's past relevant work or any work in the economy. (A.R. 45.) If, as Plaintiff testified, one could lift and carry approximately four pounds, stand fifteen minutes and sit twenty minutes at a time, but would need to lie down three hours out of eight, and could concentrate for forty minutes only before needing to rest mentally for one hour, the person could not perform Plaintiff's past relevant work or any other work. (A.R. 46.)

VI. <u>Findings concerning Plaintiff's Credibility</u>

Plaintiff raises multiple challenges to the reasons stated by the ALJ concerning Plaintiff's credibility.

A. <u>The ALJ's Findings and Reasoning</u>

The ALJ found that Plaintiff's mentally determinable

impairments could reasonably be expected to produce only some of the alleged symptoms. (A.R. 10.) Further, Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the RFC assessment. (A.R. 10-11.)

The ALJ stated numerous reasons for his findings. He noted the inconsistency of the medical evidence with Plaintiff's complaints, remarking on the mild objective findings on the x-rays and CT scans as consistent with a light RFC. (A.R. 11.) He acknowledged Dr. Fife's opinion placing Plaintiff at a less than sedentary capacity but stated that it was given little weight because it was on a check-blocks form, lacked "signs, symptoms, or other bases, or even a diagnosis," and was conclusionary, brief, and unsupported by clinical findings. (A.R. 11.)

The ALJ relied on Plaintiff's documented exaggeration. He noted that although the consulting internist assessed a light RFC, even he referred to Plaintiff's exaggeration, noting that Plaintiff was unable to do full lumbar spine range of motion on physical examination, yet nevertheless bent over to put on/take off shoes. (A.R. 11.)

The ALJ further reasoned:

> In terms of credibility, I note claimant has a dismal work history, with no full substantial gainful years in her life (citation omitted). Also, claimant does a wide range of activities of daily living not consistent with her claims of total disability. For example, she has a driver's license with no restrictions; drives an automatic van 2 times a week; lives alone in a house with her husband who works and 6 children (youngest 11, oldest 24); (sic) home alone during the day; does all personal needs; light meal preparation 2 times a day; dishes 2 times a day; laundry once a week; irons once a week; changes sheets once a week; visits family/friends once a week; watches TV 40 minute[s]

a day; helps children with homework 30 minutes a day;
and goes to school functions every 6 months. Also,
claimant seemed to exaggerate. For example, she stated
she could only concentrate 40 minutes maximum, and then
must rest mentally for 1 hour, yet, paid attention
and responded appropriately throughout the entire hearing
(about 50 minutes). She also stated she could sit
20 minutes maximum, yet sat through the whole hearing
even though I told her at the outset she could stand
at any time.

(A.R. 11.)

    B. Legal Standards

    It is established that unless there is affirmative evidence

that the applicant is malingering, then where the record includes

objective medical evidence establishing that the claimant suffers

from an impairment that could reasonably produce the symptoms of

which the applicant complains, an adverse credibility finding

must be based on clear and convincing reasons. Carmickle v.

Commissioner, Social Security Administration,, 533 F.3d 1155,

1160 (9th Cir. 2008). In Orn v. Astrue, 495 F.3d 625, 635 (9th Cir.

2007), the court summarized the pertinent standards for

evaluating the sufficiency of an ALJ's reasoning in rejecting a

claimant's subjective complaints:

> An ALJ is not "required to believe every
> allegation of disabling pain" or other non-exertional
> impairment. See Fair v. Bowen, 885 F.2d 597, 603 (9th
> Cir.1989). However, to discredit a claimant's testimony
> when a medical impairment has been established, the ALJ
> must provide "'specific, cogent reasons for the
> disbelief.'" Morgan, 169 F.3d at 599 (quoting Lester,
> 81 F.3d at 834). The ALJ must "cit[e] the reasons why
> the [claimant's] testimony is unpersuasive." Id. Where,
> as here, the ALJ did not find "affirmative evidence"
> that the claimant was a malingerer, those "reasons for
> rejecting the claimant's testimony must be clear and
> convincing." Id.

> Social Security Administration rulings specify the
> proper bases for rejection of a claimant's testimony.
> See S.S.R. 02-1p (Cum. Ed.2002), available at Policy
> Interpretation Ruling Titles II and XVI: Evaluation of

15

Obesity, 67 Fed.Reg. 57,859-02 (Sept. 12, 2002); S.S.R.
96-7p (Cum. Ed.1996), available at 61 Fed.Reg.
34,483-01 (July 2, 1996). An ALJ's decision to reject a
claimant's testimony cannot be supported by reasons
that do not comport with the agency's rules. See 67
Fed.Reg. at 57860 ("Although Social Security Rulings do
not have the same force and effect as the statute or
regulations, they are binding on all components of the
Social Security Administration, ... and are to be
relied upon as precedents in adjudicating cases."); see
Daniels v. Apfel, 154 F.3d 1129, 1131 (10th Cir.1998)
(concluding that ALJ's decision at step three of the
disability determination was contrary to agency
regulations and rulings and therefore warranted
remand). Factors that an ALJ may consider in weighing a
claimant's credibility include reputation for
truthfulness, inconsistencies in testimony or between
testimony and conduct, daily activities, and
"unexplained, or inadequately explained, failure to
seek treatment or follow a prescribed course of
treatment." Fair, 885 F.2d at 603; see also Thomas, 278
F.3d at 958-59.

Orn v. Astrue, 495 F.3d 625, 635.

Additional factors to be considered in weighing credibility include the location, duration, frequency, and intensity of the claimant's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the symptoms; treatment, other than medication, the person receives or has received for relief of the symptoms; any measures other than treatment the claimant uses or has used to relieve the symptoms; and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929; S.S.R. 96-7p.

  C. Analysis

   1. Activities of Daily Living

Plaintiff argues that Plaintiff's daily activities were insufficient to warrant a negative inference concerning her

credibility.

The mere fact of a claimant's carrying on certain daily activities does not necessarily detract from credibility as to overall disability. However, a negative inference is permissible where the activities contradict the other testimony of the claimant, or where the activities are of a nature and extent to reflect transferable work skills. Daily activities support an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions or skills that are transferable to a work setting. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); Morgan v. Commissioner of Social Sec. Admin., 169 F.3d 595, 600 (9th Cir. 1999); Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). Performance of chores such as preparing meals, cleaning house, doing laundry, shopping, occasional childcare, and interacting with others has been considered sufficient when performed for a substantial portion of the day. See, Morgan v. Commissioner, 169 F.3d at 600; Thomas v. Barnhart, 278 F.3d at 959; Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990); Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005) Stubbs-Danielson v. Astrue, 539 F.3d at 1169, 1175 (9th Cir. 2008).

The salient evidentiary characteristic is an inconsistency between the Plaintiff's subjective complaints and the Plaintiff's activities that warrants a negative credibility inference that is clear and convincing in the circumstances of the case. For example, in Valentine v. Astrue, 574 F.3d 685, 693 (9th Cir. 2009), the reviewing court upheld the ALJ's finding that although the claimant's having exercised and completed gardening projects

and community activities did not suggest that the claimant could return to a former job, it did suggest that the claimant's later claims about the severity of his limitations were exaggerated. The court concluded that it was a clear and convincing reason for rejecting the claimant's subjective complaint concerning the severity of symptoms.

Here, the ALJ appropriately considered Plaintiff's admitted activities of daily living, which included regular and substantial housekeeping, shopping, and interaction with others comparable to the activities in the aforementioned cases. Plaintiff testified to performing such a variety of tasks around the house and other activities, and doing so with a frequency and to such an extent, that it was clearly inconsistent with Plaintiff's claims of inability to perform even sedentary work. Substantial evidence supported the ALJ's reasoning, which was clear and convincing in the circumstances of the case.

## 2. Inconsistency with the Medical Evidence

Plaintiff contends that the ALJ's reasoning that Plaintiff's claimed severity of symptoms was inconsistent with the objective medical evidence was legally insufficient and was not supported by substantial evidence.

Contrary to Plaintiff's assertion, it was appropriate for the ALJ in this instance to rely on the inconsistency of Plaintiff's complaints and the objective medical evidence. Although the inconsistency of objective findings with subjective claims may not be the sole reason for rejecting subjective complaints of pain, Light v. Chater, 119 F.3d 789, 792 (9th Cir. 1997), it is one factor which may be considered with others,

1  Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Morgan v.
2  Commissioner 169 F.3d 595, 600 (9th Cir. 1999); Burch v. Barnhart,
3  400 F.3d 676, 681 (9th Cir. 2005).

4      Further, substantial evidence supported the ALJ's reasoning.
5  The treating notes and studies reflected only mild findings; even
6  though there was some foraminal narrowing at one site, it was
7  mild, and opinion evidence supported a finding that it was
8  congenital.

9      Further, the ALJ relied on the opinions of the consulting
10  internist and state agency medical consultant that Plaintiff
11  could perform light work. The inconsistency of medical opinions
12  with a claimant's subjective complaints is appropriately
13  considered by an ALJ in rejecting a claimant's credibility.
14  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008).
15  Here, the consulting examiner was the source of the most
16  extensive objective findings, and his findings and opinion were
17  consistent with the overall medical evidence of record that had
18  not been discounted by the ALJ.

19      The Court concludes that in relying on the inconsistency of
20  Plaintiff's complaints with the medical opinions and the
21  objective medical evidence, the ALJ stated clear and convincing
22  reasons supported by substantial evidence.

23                  3. Exaggeration and the ALJ's Observations

24      With respect to the Plaintiff's exaggeration of her
25  symptoms, Plaintiff asserts that the record contains no evidence
26  of malingering. Plaintiff also argues that the ALJ's reliance on
27  his observations of Plaintiff at the hearing was improper.

28      The evidence included the consulting examiner's observation

that Plaintiff easily ambulated, maneuvered, and bent in a manner claimed by her to have been precluded by her impairments. This evidence reflected a trained professional's observation that Plaintiff's subjective complaints clearly exceeded Plaintiff's actual abilities. This evidence was substantial and supported the ALJ's reliance on Plaintiff's exaggeration as a significant factor bearing upon her credibility. It is established that amplification of symptoms can constitute substantial evidence supporting the rejection of a subjective complaint of severity of symptoms. Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993).

In referring to additional evidence of Plaintiff's exaggeration, the ALJ noted Plaintiff's having sat and concentrated for about fifty minutes at the hearing in contrast to her claim that she could concentrate for a maximum of forty minutes and sit for only twenty minutes. (A.R. 11.)

Observations by the ALJ of a person's functioning may not form the sole basis for discrediting a person's testimony; rather, they may be used only in the overall evaluation of the credibility of the individual's statements. Orn v. Astrue, 495 F.3d 625, 639-40 (9th Cir. 2007) (citing S.S.R. 96-7p at 7).

Here, in the course of his review of the medical evidence pertinent to Plaintiff's RFC, the ALJ had found significant the consulting examiner's observation of Plaintiff's exaggeration of the severity of her symptoms. (A.R. 11.) Such observations are appropriate and probative. See, Batson v. Commissioner, 359 F.3d 1190, 1196 (9th Cir. 2004).

The ALJ consistently found significant his own observations concerning Plaintiff's apparent exaggeration of her subjective

20

symptoms. The observations of the ALJ were specific and significantly inconsistent with Plaintiff's likewise specific claims concerning her maximum ability to engage in behavior central to the progress of an administrative hearing, namely, sitting and concentrating. This reasoning was stated as the last of many reasons articulated by the ALJ. (A.R. 11.) The Court concludes that it was appropriate and related to the ALJ's overall assessment of credibility.

Plaintiff contends that the reasoning lacks the support of substantial evidence because the record reflects that the hearing in question began at 1:05 p.m. and concluded at 1:52 p.m. (A.R. 22, 47); thus, the duration of the proceeding was not fifty minutes but rather was only forty-seven minutes. Further, Plaintiff points to the fact that some of the hearing consisted of the ALJ's introductory remarks and the testimony of the vocational expert, and thus the record does not reflect the assumed period of concentration. Finally, Plaintiff points to instances of the ALJ's admonishing Plaintiff to focus on his questions and concludes that these directions further undermine the evidentiary support for a conclusion that Plaintiff was able to concentrate throughout the hearing.

The ALJ's observations provide a solid evidentiary basis for an inference that Plaintiff exaggerated the extent of any limitation of her ability to sit, and, in combination with the consulting examiner's observations, constitute substantial evidence of Plaintiff's exaggeration.

The substantiality of the evidence concerning Plaintiff's ability to concentrate is less clear, but it does not appear that

1  it was necessary to the ALJ's conclusion concerning Plaintiff's
2  exaggeration because that conclusion was amply supported by
3  other, independent evidence.

4                    4. Poor Work History

5       Plaintiff challenges the ALJ's conclusion that Plaintiff's
6  work history was dismal. (A.R. 11.) Plaintiff asserts that she
7  was a "classic stay at home mom," (Brief p. 16, ll. 4-5), for a
8  period of time that is unclear but perhaps even throughout her
9  children's lives; however, there is no evidence in the record
10 that specifically describes the living circumstances, support
11 systems, if any, availability for work outside the home, and role
12 of Plaintiff during the period from 2005 forward. The record
13 reflects that at the time of her testimony in 2008, Plaintiff
14 performed some of the tasks of a homemaker and tended to her six
15 children, some of whom were minors and at least one of whom at
16 age twenty-four had been an adult for a substantial period of
17 time. Her only recorded earnings were for a month each in 2004
18 and 2005.

19      A claimant's extremely poor work history shows that she has
20 little propensity to work and negatively affects her credibility
21 regarding her inability to work. Thomas v. Barnhart, 278 F.3d
22 947, 959 (9th Cir. 2002). The record supports a conclusion that
23 Plaintiff had a very limited history of remunerative work. Given
24 Plaintiff's status as the parent of six children, to characterize
25 her work history as "dismal" for purposes of determining
26 motivation or credibility may not have been supported by
27 substantial evidence or have been clear and convincing in the
28 circumstances of the case.

1    However, as the foregoing analysis has shown, the remaining
2  reasoning of the ALJ was clear and convincing and was supported
3  by substantial evidence.

4    Where only some of the specific reasons stated by an ALJ for
5  rejecting an applicant's credibility are legally sufficient or
6  supported by the record, but others are not, the Court must
7  consider whether the ALJ's reliance on invalid reasons was
8  harmless error. Batson v. Commissioner of Social Security
9  administration, 359 F.3d 1190, 1195-97 (9th Cir. 2004). Such
10 errors are harmless and do not warrant reversal where there
11 remains substantial evidence supporting the ALJ's conclusions on
12 credibility, and the error or errors do not negate the validity
13 of the ALJ's ultimate credibility conclusions. Carmickle v.
14 Commissioner, Social Security Administration, 533 F.3d 1155, 1162
15 (9th Cir. 2008). The relevant inquiry is not whether the ALJ would
16 have made a different decision absent any error, but rather
17 whether the ALJ's decision remains legally valid despite such
18 error. Id.

19   Here, the significance of Plaintiff's having a record of
20 having worked for only one month each out of two years, one of
21 which was before the alleged date of onset, is independent of the
22 remainder of the ALJ's reasons, which related to Plaintiff's
23 ability to perform daily activities, the medical evidence, and
24 Plaintiff's own exaggeration of her symptoms. The ALJ's decision
25 remains legally valid despite the error.

26   In summary, even though one factor relied upon by the ALJ
27 was not legally sufficient, the ALJ nevertheless articulated
28 multiple clear and convincing reasons, supported by substantial

evidence, for discrediting Plaintiff's subjective complaints regarding the severity of her symptoms. Cf. Batson v. Commissioner of the Social Security Administration, 359 F.3d 1190, 1196 (9th Cir. 2004).

Accordingly, the Court concludes that the ALJ cited clear and convincing reasons for rejecting Plaintiff's subjective complaints regarding the intensity, duration, and limiting effects of her symptoms, and that the ALJ's reasons were properly supported by the record and sufficiently specific to allow this Court to conclude that the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit Plaintiff's testimony.

VII. Rejection of the Opinion of the Treating Physician

Plaintiff argues that the ALJ failed to set forth a specific, legitimate reason for rejecting the opinion of Plaintiff's treating physician, Roger Fife, M.D.

A. The ALJ's Reasoning

With respect to the expert opinions, the Court reiterates that the ALJ's express treatment of those opinions was interspersed with the ALJ's evaluation of the other medical evidence. The ALJ noted the inconsistency of the medical evidence with Plaintiff's complaints, remarking on the mild objective findings on the x-rays and CT scans as consistent with a light RFC. (A.R. 11.) He also noted the state agency medical consultant's opinion that the ALJ interpreted as providing for a light RFC. (Id.) With respect to Dr. Fife's opinion, the ALJ stated:

There is a check-blocks form that puts claimant at

24

1
2
3
4

> less than sedentary (citation omitted). That opinion
> is given little weight as it lacks signs, symptoms,
> or other bases, or even a diagnosis. See, *Matney v.
> Sullivan*, 981 F.2d 1016, 1019-20 (9th Cir. 1992) where
> it was held that an ALJ need not accept a treating
> physician's opinion if it is conclusionary and brief,
> and unsupported by clinical findings.

5   (A.R. 11.) After setting forth his reasoning concerning

6   Plaintiff's credibility, the ALJ then returned to the medical

7   evidence:

8
9
10

> As for the opinion evidence, I afford significant
> weight to the opinion of the consulting internist
> as it is consistent with the objective findings. I
> have also given considerable weight to the opinion
> of the State agency medical consultant.

11   (A.R. 11.)

12         B. <u>Legal Standards</u>

13         The standards for evaluating treating source's opinions are

14   as follows:

15
16
17
18
19
20
21
22
23
24
25
26
27
28

> By rule, the Social Security Administration favors
> the opinion of a treating physician over
> non-treating physicians. See 20 C.F.R. § 404.1527.
> If a treating physician's opinion is
> "well-supported by medically acceptable clinical
> and laboratory diagnostic techniques and is not
> inconsistent with the other substantial evidence
> in [the] case record, [it will be given]
> controlling weight." <u>Id.</u> § 404.1527(d)(2). If a
> treating physician's opinion is not given
> "controlling weight" because it is not
> "well-supported" or because it is inconsistent
> with other substantial evidence in the record, the
> Administration considers specified factors in
> determining the weight it will be given. Those
> factors include the "[l]ength of the treatment
> relationship and the frequency of examination" by
> the treating physician; and the "nature and extent
> of the treatment relationship" between the patient
> and the treating physician. <u>Id.</u> §
> 404.1527(d)(2)(i)-(ii). Generally, the opinions of
> examining physicians are afforded more weight than
> those of non-examining physicians, and the
> opinions of examining non-treating physicians are
> afforded less weight than those of treating
> physicians. <u>Id.</u> § 404.1527(d)(1)-(2). Additional
> factors relevant to evaluating any medical

> opinion, not limited to the opinion of the
> treating physician, include the amount of relevant
> evidence that supports the opinion and the quality
> of the explanation provided; the consistency of
> the medical opinion with the record as a whole;
> the specialty of the physician providing the
> opinion; and "[o]ther factors" such as the degree
> of understanding a physician has of the
> Administration's "disability programs and their
> evidentiary requirements" and the degree of his or
> her familiarity with other information in the case
> record. Id. § 404.1527(d)(3)-(6).

Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007).

     With respect to proceedings under Title XVI, the Court notes
that an identical regulation has been promulgated. See, 20 C.F.R.
§ 416.927.

     As to the legal sufficiency of the ALJ's reasoning, the
governing principles have been recently restated:

> The opinions of treating doctors should be given more
> weight than the opinions of doctors who do not treat
> the claimant. Lester [v. Chater, 81 F.3d 821, 830 (9th
> Cir.1995) (as amended).] Where the treating doctor's
> opinion is not contradicted by another doctor, it may
> be rejected only for "clear and convincing" reasons
> supported by substantial evidence in the record. Id.
> (internal quotation marks omitted). Even if the
> treating doctor's opinion is contradicted by another
> doctor, the ALJ may not reject this opinion without
> providing "specific and legitimate reasons" supported
> by substantial evidence in the record. Id. at 830,
> quoting Murray v. Heckler, 722 F.2d 499, 502 (9th
> Cir.1983). This can be done by setting out a detailed
> and thorough summary of the facts and conflicting
> clinical evidence, stating his interpretation thereof,
> and making findings. Magallanes [v. Bowen, 881 F.2d
> 747, 751 (9th Cir.1989).] The ALJ must do more than
> offer his conclusions. He must set forth his own
> interpretations and explain why they, rather than the
> doctors', are correct. Embrey v. Bowen, 849 F.2d 418,
> 421-22 (9th Cir.1988).
> Reddick v. Chater, 157 F.3d 715, 725 (9th Cir.1998);
> accord Thomas, 278 F.3d at 957; Lester, 81 F.3d at
> 830-31.

Orn v. Astrue, 495 F.3d at 632.

     Here, because the opinions of Drs. Nowlan and Zheutlin

1  contradicted Dr. Fife's opinion of Plaintiff's functional
2  capacity, the ALJ was required to state specific, legitimate
3  reasons for his weighing of the treating physician's opinion.

4      It is established that a conclusional opinion that is
5  unsubstantiated by relevant medical documentation may be
6  rejected. See Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir.
7  1995). It is appropriate for an ALJ to consider the absence of
8  supporting findings, and the inconsistency of conclusions with
9  the physician's own findings, in rejecting a physician's opinion.
10 Johnson v. Shalala, 60 F.3d 1428, 1432-33 (9th Cir. 1995); Matney
11 v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992); Magallanes v.
12 Bowen, 881 F.2d 747, 751 (9th Cir. 1989). It is permissible for an
13 ALJ to prefer an opinion supported by specific clinical findings
14 and an explanation thereof over a check-off type of form lacking
15 an explanation of the basis for the conclusions. Crane v.
16 Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (citing Murray v.
17 Heckler, 722 F.2d 499, 501 (9th Cir. 1983)); see Batson v.
18 Commissioner of the Social Security Administration, 359 F.3d
19 1190, 1195 (9th Cir. 2004).

20     Here, Dr. Fife's opinion was a series of circles and checks
21 on a single-page form on which there were stated various bare
22 conclusions concerning the claimant's functional capacities;
23 although there was a space for a word or two in the way of
24 remarks in the last of seven blocks that cover the lower two-
25 thirds of the page, no remarks or explanations were included.
26 (A.R. 177.) Further, although Dr. Fife's treatment notes contain
27
28

1  a diagnosis,[1] the opinion itself, which was the subject of the

2  ALJ's reasoning, contained no diagnosis.

3       Further, the opinion was inconsistent with Dr. Fife's mild

4  findings. For example, on the day before he rendered his opinion

5  that Plaintiff could perform less than sedentary work, Dr. Fife

6  recorded low back tenderness "but good ROM" (range of motion),

7  and normal straight leg raising. (A.R. 171.) Neither the notes

8  nor the opinion explained how Plaintiff's mild findings resulted

9  in disabling limitations. Although Plaintiff refers to Dr. Fife's

10 medical findings and detailed progress notes, there is no

11 reference to any specific findings in Dr. Fife's records, and a

12 review of the records shows an absence of findings. (A.R. 170-

13 77.)

14      The ALJ also appropriately placed weight on the opinions

15 that were consistent with the objective findings and with the

16 medical evidence as a whole. (A.R. 11.)

17      The ALJ thus stated specific, legitimate reasons for placing

18 little weight on the treating physician's opinion, and those

19 reasons were supported by substantial evidence in the record.

20      VIII. <u>Disposition</u>

21      Based on the foregoing, the Court concludes that the ALJ's

22 decision was supported by substantial evidence in the record as a

23 whole and was based on the application of correct legal

24 standards.

25      Accordingly, the Court AFFIRMS the administrative decision

26

27          [1] Notes of the exam performed on March 13, 2008, one day
    before the date of Dr. Fife's opinion, reflect diagnoses of
28  depression and degenerative arthritis. (A.R. 171.)

of the Defendant Commissioner of Social Security and DENIES

Plaintiff's Social Security complaint.

     The Clerk of the Court IS DIRECTED to enter judgment for

Defendant Michael J. Astrue, Commissioner of Social Security,

and against Plaintiff Sia V. Lee.

IT IS SO ORDERED.

**Dated:**    **April 1, 2010**                   **/s/ Sandra M. Snyder**

                                    UNITED STATES MAGISTRATE JUDGE